UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY McCRAY,

                Petitioner,                        Case No. 08-10134
                                                      Honorable David M. Lawson

v.

BARRY DAVIS,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Stanley McCray, presently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted following a bench trial in the Wayne County, Michigan circuit court of assault with intent to commit murder, Mich. Comp. Laws § 750.83, armed robbery, Mich. Comp. Laws § 750.529, and commission of a felony with a firearm, Mich. Comp. Laws § 750.227b. He was sentenced to concurrent prison terms of fifteen to thirty years for assault and robbery, and to a consecutive two years for the firearm offense. The petitioner alleges that the State did not produce sufficient evidence at trial to support his armed robbery conviction; the trial court rendered inconsistent verdicts by convicting the petitioner but acquitting his cousin on the same facts; insufficient evidence was presented at trial to support his assault with intent to commit murder conviction; inaccurate information was relied upon to determine his sentence; he was denied the effective assistance of counsel; and prosecutorial misconduct during trial. Respondent filed an answer to the petition, asserting that the petition was filed out of time, the petitioner's claims were denied by the state court on the basis of a state procedural rule that provides independent grounds so federal relief cannot be given, and the claims lack merit. The Court finds that the petition was

timely filed but that the petitioner's claims are without merit. The Court will therefore deny the petition.

I.

In 1999, the petitioner, his cousin Stacey McCray, and Anthony L. Johnson were jointly charged with crimes arising out of the fatal shooting of Eien Johnson. Evidence presented at trial showed that the victim died as the result of a gunshot wound to the head. Shanetta Boles, an eyewitness, testified that the petitioner and the two other defendants, Anthony Johnson and Stacey McCray, robbed the victim of a small amount of cash and drugs at gunpoint in an apartment she shared with the victim. When the victim tried to escape, she saw the petitioner shoot him a number of times. After the perpetrators left, Boles sat with the victim as he held his bleeding chest. Boles and the victim heard noises by their back door. Boles testified that the victim jumped out of a second-story window onto the street below out of fear that the men had returned to kill them. Anthony Johnson ran to where the victim landed and shot him in the head, killing him. Boles heard shots being fired outside but did not see the shooting. She then escaped through the back door of the apartment. The petitioner was arrested later and made a statement to police in which he admitted shooting the victim three or four times in the apartment, but he claimed that he had acted in self defense. Anthony Johnson was convicted of second degree murder and possession of a firearm in the commission of a felony, Stacey McCray was acquitted of all charges, and the petitioner was convicted of assault with intent to commit murder, armed robbery, and commission of a felony with a firearm.

Following his conviction and sentence, the petitioner filed a direct appeal. The petitioner raised the following issues to the court of appeals:

-2-

I. The prosecution failed to submit sufficient credible evidence to establish [Petitioner's] guilt beyond a reasonable doubt for the offense of armed robbery, thereby depriving him of his constitutional right to due process of law as guaranteed by the United States and Michigan Constitution.

II. The trial court, sitting as the trier of fact, improperly derived inconsistent verdicts based upon the same evidence by finding [Petitioner] guilty of armed robbery and Mr. Stacey McCray not guilty of any criminal conduct based upon the same set of facts, thereby depriving [Petitioner] of his constitutional right to due process of law.

III. The prosecution failed to submit sufficient credible evidence to establish [Petitioner's] guilt beyond a reasonable doubt for the offense of assault with intent to murder, thereby depriving him of his constitutional right to due process of law as guaranteed by the United States and Michigan Constitutions.

IV. [Petitioner's] sentence should be set aside because the trial court relied upon inaccurate information in the imposition of her [sic] sentence by relying upon inaccurately scored sentencing guidelines, thereby depriving [Petitioner] of his constitutional right to due process under the United States and Michigan Constitutions.

The Michigan Court of Appeals issued an unpublished per curiam opinion affirming the petitioner's convictions and sentences. *People v. McCray*, No. 229132, 2002 WL 533858 (Mich. Ct. App. Apr. 9, 2002).

The petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, raising the same claims he presented to the Michigan Court of Appeals, which was denied on December 4, 2002. *People v. McCray*, 467 Mich. 910, 654 N.W.2d 334 (2002).

The petitioner asserts that he mailed a motion for relief from judgment to the trial court in July 2003. He has attached a return receipt to his petition that shows an article was received by the trial court on July 7, 2003.

On January 19, 2005, having heard nothing from the trial court about the status of his motion, the petitioner sent a letter of inquiry to the trial court. On February 2, 2005, the trial court replied that it had no information regarding the receipt of a motion for relief from judgment. The court

-3-

advised the petitioner that if he desired to pursue post-conviction relief, he should submit his motion to the clerk of the court at the listed address.  On March 7, 2005, the petitioner re-filed his motion from relief from judgment, which was received and docketed by the trial court.  He raised the following two claims:

> I. Ineffective assistance of counsel
>
>> A. Trial counsel's cumulative errors, along with trial counsel's lack of diligence prejudice[d] Petitioner, and amounted to ineffective assistance of trial counsel.
>>
>> B. Trial counsel's failure to investigate the actual crime scene and trial counsel's failure to call witnesses amount to ineffective assistance of counsel.
>
> II. Prosecutorial misconduct
>
>> A. Prosecutorial misconduct occurred when the prosecutor insisted on making [Petitioner] as the actual shooter of the victim when it was clearly stated on the record that [Petitioner] had left the scene.
>>
>> B. Prosecutorial misconduct took place when the prosecution appealed to the sympathy of the trial court, by repeatedly stating that the victim never really had a chance, and that [Petitioner] was a monster by his actions [ ] which were unwarranted by photos of the victim[']s body, and the prosecution knowing before hand [sic] that it's [sic] witness (Ms. Shanetta Boles) had tampered with the body, picking it up and moving it, before the emergency workers or the Detroit Police Department arrived. Also it was reiterated that [Petitioner] did not come to rob the victim, however prosecution's misuse of the [ ]actual facts and prosecution choosing to make [Petitioner] out to be the primary conspirator was the wrong decision by prosecution, and one that warrant's [sic] closer review of evidence collected.

On October 25, 2005, the trial court issued an opinion and order denying the motion.  The petitioner then filed a delayed application for leave to appeal challenging the rejection of the two claims raised in his motion for relief from judgment.  The Michigan Court of Appeals denied the petitioner's

application "for failure to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." *People v. McCray*, No. 268557 (Mich. Ct. App. Sept. 15, 2006).  The petitioner then filed an application for leave to appeal the with the Michigan Supreme Court, which was denied on November 29, 2007, citing the petitioner's failure "to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." *People v. McCray*, 480 Mich. 949, 741 N.W.2d 370 (2007).

The petitioner signed and dated his habeas corpus petition in this case on January 3, 2008. The petition raises the four claims presented to the state court of appeals on direct appeal, and the two claims raised in his motion for relief from judgment.

II.

As an initial matter, the respondent argues that the petition is subject to dismissal because it was filed after the expiration of the one-year statute of limitations.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) amended 28 U.S.C. § 2244 to include a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. *See Vroman v. Brigano*, 346 F.3d 598, 601 (6th Cir. 2003).  The one-year statute of limitations runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such a review.  *See* 28 U.S.C. § 2244(d)(1)(A). A habeas petition filed outside the time period prescribed by this section must be dismissed.  *Isham v. Randle*, 226 F.3d 691, 694 (6th Cir. 2000) (case filed thirteen days after the limitations period expired dismissed for failure to comply), *abrogated on other grounds by Abela v. Martin*, 348 F.3d 164, 172 (6th Cir. 2003) (en banc).

The petitioner's conviction in this case became final on March 4, 2003, ninety days after the Supreme Court's order denying leave to appeal from his direct appeal, when the time for filing a

-5-

petition for a writ of certiorari in the United States Supreme Court expired. *See Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000). The petitioner had one year from that date to file a habeas petition or a petition for state post-conviction review to toll the limitations under 28 U.S.C. § 2244(d)(2).

The petitioner's motion for relief from judgment was not accepted for filing by the state trial court until March 7, 2005, after the limitations period would have already expired. The petitioner's motion for relief from judgment did "not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (6th Cir. 2000). The respondent argues that the petitioner's earlier attempt to submit his post-conviction motion does not count because the court clerk did not file it. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.").

The petitioner contends, however, that his petition should nevertheless be considered timely filed because he mailed his motion for relief from judgment to the state trial court in July of 2003, about four months after the limitations period started running. He has submitted a postal receipt substantiating this claim. He states that he was not aware that his motion was not accepted for filing until he wrote a letter inquiring about its status on January 19, 2005. Upon learning that the court did not receive his first motion, the petitioner promptly re-mailed his motion, which was accepted for filing on March 7, 2005.

"Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). In order to be entitled

to equitable tolling, a habeas petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The Sixth Circuit considers five factors to determine whether it would be appropriate to equitably toll the statute of limitations in a habeas case: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).

The doctrine of equitable tolling should be used "sparingly," *id.* at 1008-09, and "[a]bsent a satisfactory explanation for his failure to timely file his habeas petition," a petitioner is not entitled to equitable tolling of the limitations period, *id.* at 1010. A habeas petitioner bears the burden of establishing that he is entitled to equitable tolling of the one-year limitations period. *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003).

The petitioner does not suggest that he lacked notice of the one-year statute of limitations. Therefore, this court's inquiry must focus on "examining his diligence in pursuing his rights and the reasonableness of his ignorance of the effect of his delay." *Vroman*, 346 F.3d at 605.

The petitioner has provided evidence that he attempted to file his motion for relief from judgment with the state trial court in July 2003, and the respondent does not argue that the petitioner was somehow responsible for the trial court's failure to properly file his motion. Instead, the respondent argues that the eighteen months the petitioner waited to follow up on the status of his

-7-

motion did not amount to due diligence.  However, the petitioner waited almost two years for the state court of appeals to issue its decision on his direct appeal.  "From a litigant's perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion."  *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002) (finding that a habeas petitioner acted diligently to pursue his rights even though he waited nine months before asking the court to rule on his application).  As an inexperienced litigant, it was not unreasonable for the petitioner to estimate that the state trial court might take up to two years or longer to issue its decision on his motion for relief from judgment.

The Court finds that the petitioner acted with diligence to ensure that he had properly filed his post-conviction motion in the state court, and equitable tolling of the one-year statute of limitations under § 2244(d)(2) is appropriate.  There was no defect in the original attempt at filing the motion that is attributable to the petitioner, and although the petitioner waited over one year to inquire about the status of his motion, the delay was not so long that the petitioner should reasonably have suspected that the trial court had failed to receive his motion.  Because the petitioner acted with due diligence in attempting to pursue his collateral review proceeding in the state courts, he is entitled to equitable tolling from the date he first mailed the motion to the trial court to the date the trial court actually filed it.

Adding this period of equitable tolling to the period that the statute of limitations was statutorily tolled under § 2244(d)(2), the petition was timely filed.  The Court will proceed to the merits of the petitioner's claims.

III.

-8-

The provisions of the AEDPA which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially

> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409.  The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than *de novo* review.  AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."  *Renico v. Lett*, ---U.S. ----, ----, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, --- U.S. ----, ----, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court" (*quoting Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam))); *Phillips v. Bradshaw*, 607 F.3d 199, 205

(6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).

A.

The petitioner first asserts that insufficient evidence was presented at trial to sustain his conviction for armed robbery.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Ibid.* (citing *Gall v. Parker*, 231 F.3d 265, 286 ( 6th Cir. 2000)). The Court need not be convinced that the petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

-11-

The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002), requiring the Court to discuss the elements of the crimes charged.

Armed robbery under Michigan law is a statutory offense.  *See* Mich. Comp. Laws § 750.529.  The state courts construe this statute to define the elements of armed robbery as "(1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 206 Mich. App. 122, 123, 520 N.W.2d 672, 673 (1994).

Applying the *Jackson* standard, the Michigan Court of Appeals rejected the petitioner's insufficiency of evidence arguments as follows:

> When viewed in the light most favorable to the prosecution, the record contains sufficient evidence to sustain a finding of felonious taking of property from the victim by defendant.  Shanetta Boles testified that while codefendant Johnson held a gun on the victim, defendant and his cousin went through the victim's pockets, in which the victim had a "couple of dollars."  Boles repeatedly testified that she knew money and drugs were taken from the victim but she could not say exactly what or how much was taken.  Further, Boles testified that before the robbery the victim had money, and testified that during the assault, she saw money taken from the victim's pockets.  Further, the prosecutor introduced testimony from an evidence technician that he did not find any drugs or money at the crime scene.  From this evidence a rational trier of fact could reasonably infer that defendant, or codefendants with whom he was acting in concert, permanently deprived the victim of money while the victim was being assaulted by two men with guns.  *People v. Lee*, 243 Mich. App. 163, 168, 622 N.W.2d 71, 75-76 (2000); *People v. Johnson*, 215 Mich. App. 658, 671, 547 N.W.2d 65, 71-72 (1996).

> Defendant argues that Boles testified that defendant and Stacey did not take anything from the victim's pockets.  Defendant misreads the part of the record that refers to the victim voluntarily giving the codefendants money for a cab before the robbery, but that thereafter the victim did not "give them anything," apparently referring to the taking of property being against the will of the victim.  To the extent that defendant argues inconsistencies in Boles' testimony and challenges her

-12-

credibility, defendant's argument fails.  At a bench trial the trier of fact determines the weight of the evidence and the credibility of the witnesses.  *People v. Jackson*, 178 Mich. App. 62,  64-65, 443 N.W.2d 423, 425 (1989).  The trial court found Boles' testimony that money was taken from the victim to be credible.  Thus, there was sufficient evidence at trial for a rational factfinder to conclude that the elements of armed robbery were proved beyond a reasonable doubt.  *Lee*, 243 Mich. App. at 169, 622 N.W.2d at 76; *Johnson*, 215 Mich. App. at 671, 547 N.W.2d at 71-72.

*People v. McCray*, 2002 WL 533858 at *1-2.

This decision was neither contrary to nor an unreasonable application of *Jackson*.  The petitioner does not dispute that constitutionally sufficient evidence was presented at trial that he was armed with a weapon and committed an assault.  Rather the petitioner argues that evidence was lacking on the larceny element of the crime.  But Boles testified that two of the perpetrators, including the petitioner, went through the victim's pockets as he tried to run out of the apartment.  Trial Tr. June 21, 2000, at 31-32.  Boles testified that earlier the victim had given the men twenty dollars for cab fair, but he did not give them anything at the time of the assault.  *Id.*  The petitioner reads this testimony as suggesting that the men were unable to get anything from the victim's pockets during the robbery.  But the question asked by the prosecutor was "at the point in time that Stacey and Tadow are trying to get into his pockets, did he give them anything at that point?"  *Id.*  Boles answered "No."

Viewed most favorably to the prosecution, this testimony indicates that the victim did not give any more money to the men voluntarily, but it does not exclude the possibility that they took money from his pocket.  In fact, Boles testified that the victim still had "a couple of dollars" at the time of the assault.  *Id.*  On cross-examination, she clarified that she thought a couple of dollars were taken from the victim's pocket, and that drugs were taken from the apartment.  *Id.* at 57-59.  This testimony was sufficient to establish beyond a reasonable doubt that the petitioner took property

-13-

from the victim during the assault. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983) (quoting *Jackson*, 442 U.S. at 326). It is the province of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d at 618. The Michigan Court of Appeals' decision that a rational trier of fact could find the essential elements of armed robbery beyond a reasonable doubt was reasonable. The petitioner is therefore not entitled to relief on this claim.

B.

The petitioner next asserts that the trial court improperly rendered inconsistent verdicts by acquitting Stacey McCray of all charges but finding the petitioner guilty of armed robbery, even though the same evidence was presented against both men.

The Supreme Court has stated that "inconsistent verdicts are constitutionally tolerable," *Dowling v. United States*, 493 U.S. 342, 353-54 (1990), and "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." *Harris v. Rivera*, 454 U.S. 339, 345 (1981); *see also Dunn v. United States*, 284 U.S. 390, 393 (1932) (observing that "[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt" (quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925))). That an inconsistent verdict may favor a criminal defendant as well as a prosecutor "militates against review of such convictions at the defendant's behest." *United States v. Powell*, 469 U.S. 57, 65 (1984). The fact that an inconsistent

-14-

verdict might be the result of lenity on the part of the fact finder, especially considering the prosecutor's inability to obtain appellate review of a conviction, "suggests that inconsistent verdicts should not be reviewable." *Id.* at 66. The state court's affirmation of the petitioner's conviction is not an unreasonable application of clearly established federal law. The petitioner is not entitled to relief on this claim.

C.

The petitioner next argues that insufficient evidence was presented at trial to sustain his conviction for assault with intent to commit murder. He contends that the eyewitness testified that she was not sure whether the petitioner pointed his handgun at the victim's chest or legs when he shot at him.

Under Michigan law, the elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder." *Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 305, 581 N.W.2d 753, 759 (1998)). The intent element for this crime is not the same as the "malice" element necessary to prove murder. Under state law, malice may be proved by showing an intent to kill, but it also may be proved by showing an intent to inflict great bodily harm, or a wanton and wilful disregard of the likelihood that the natural tendency of the actor's behavior is to cause death or great bodily harm. *See People v. Aaron*, 409 Mich. 672, 714, 299 N.W.2d 304, 319-20 (1980). To prove the crime of assault with intent to murder, the state must show that at the time of the assault, the defendant harbored the actual intent to kill. *People v. Taylor*, 422 Mich. 554, 567, 375 N.W.2d 1, 7 (1985) (citing *Maher v. People*, 10 Mich. 212, 217-18 (1862); *Roberts v. People*, 19 Mich. 401, 415-16 (1870)). Of course, that intent may be proved by circumstantial evidence.

-15-

*Id.* at 568, 375 N.W.2d at 8 (observing that the jury may consider "[t]he nature of the defendant's

acts constituting the assault; the temper or disposition of mind with which they were apparently

performed, whether the instrument and means used were naturally adapted to produce death, his

conduct and declarations prior to, at the time, and after the assault, and all other circumstances

calculated to throw light upon the intention with which the assault was made" (quoting *Roberts*, 19

Mich. at 415-16)).   The intent to kill may be inferred from the use of a lethal weapon.  *In re Guilty*

*Plea Cases*, 395 Mich. 96, 130, 235 N.W.2d 132, 145 (1975).

> The Michigan Court of Appeals rejected the petitioner's claim as follows:

> Boles testified that she saw defendant shoot the victim more than once in the chest or legs.  Boles also testified she heard three gunshots and then another gunshot that sounded like codefendant Johnson's gun.  Defendant admitted in his statement to police and in his trial testimony that he fired his .22-caliber revolver three or four times at the victim, claiming self-defense.  The autopsy report indicated that the victim suffered seven gunshot entrance wounds.  Boles also testified that after being shot in the apartment, the victim complained of being numb, and could walk with a limp only with assistance and was bleeding heavily.  Police Officer Michael Passage testified he found blood in every room of the house and a trail of blood leading to where the victim lay dead in the street.  A rational trier of fact could find from this evidence that defendant shot the victim several times, and could infer from this evidence that defendant intended to kill the victim by shooting him multiple times. This Court has held that shooting a victim or attempting to shoot a victim multiple times is sufficient to raise an inference of intent to kill on the shooter's part.  *People v. Davis*, 216 Mich. App. 47, 53, 549 N.W.2d 1, 4-5 (1996); *Johnson*, 215 Mich. App. at 672.  We conclude the prosecution presented sufficient evidence for the trial court to find that the elements of assault with intent to commit murder were proved beyond a reasonable doubt.  *People v. Wolfe*, 440 Mich. 508, 515, 489 N.W.2d 748, 751 (1992); *People v. Petrella*, 424 Mich. 221, 269-70, 380 N.W.2d 11, 32-33 (1985).

*People v. McCray*, 2002 WL 533858 at *2.

The state court of appeals' decision was neither contrary to nor an unreasonable application

of clearly established federal law, nor was it based on an unreasonable determination of the facts in

light of the evidence presented at trial.  The evidence presented at trial demonstrated that the

petitioner personally fired multiple gunshots at the victim in the apartment.  Viewed in a light most favorable to the prosecution, the evidence also permitted the inference that one of the petitioner's confederates subsequently shot and killed the victim in the street after he attempted to escape from the apartment.  The evidence that the petitioner shot at the victim multiple times standing by itself supports an inference of an intent to kill, and the fatal shooting that occurred outside the apartment immediately after the robbery only further supports the inference that the three perpetrators of the robbery intended to kill the victim all along.  The petitioner is not entitled to habeas relief on his third claim.

D.

The petitioner next argues that the state court incorrectly scored his sentencing offense variable 3 to reflect the fact that the victim died.  Because the victim died as a result of the shooting in the street and not in the apartment where the petitioner shot him, the petitioner argues that the variable should have been scored at a lower level.

A claim that the state trial court incorrectly scored, calculated, or applied the state legislative sentencing guidelines is not cognizable for federal habeas review because it is based solely on state law.  *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).  "A federal court may not issue the writ on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Therefore, a claim that the trial court misscored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review.  *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797-98 (E.D. Mich. 1999).

E.

-17-

The petitioner next contends that he was denied effective assistance of counsel because his trial counsel conducted an inadequate investigation and mounted no meaningful adversarial challenge to the prosecution. He does not point to any specific act or omission other than his counsel's failure to investigate the possibility of raising an alibi defense. The respondent asserts that review of the claim is barred because the state court relied on a state procedural ground in denying relief during state post-conviction review proceedings.

The respondent's defense is known as the doctrine of procedure default. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., make a contemporaneous objection or file a motion for a directed verdict. *See Simpson v. Sparkman*, 94 F.3d 199, 202-03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 575-76 (6th Cir. 2002).

The petitioner's ineffective assistance of counsel claim was first presented to the state courts in his motion for relief from judgment filed in the trial court. That court denied the motion under Michigan Court Rule 6.508(D)(3)(b)(i) because the petitioner had not demonstrated that he would be actually prejudiced by a failure to review his claims. Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the

failure to raise such grounds previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal."  Mich. Ct. R. 6.508(D)(3)(b)(i).

Following the trial court's denial of his motion on the grounds stated above, both Michigan appellate courts denied relief by issuing form orders citing the petitioner's "failure to demonstrate entitlement to relief under Mich. Ct. R. 6.508(d)."  The Sixth Circuit has recently held that "[b]rief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar." *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010) (en banc).  Therefore, this Court must "look through" the unexplained orders of the Michigan appellate courts to the decision of the state trial court to determine the basis for the denial of state post-conviction relief.  *Id.* at 291.

Here, the state trial court explicitly and unambiguously relied on Michigan Court Rule 6.508(D)(3)(b)(i) in determining that the petitioner failed to establish actual prejudice.  Under these circumstances, the petitioner's post-conviction claims are procedurally defaulted.  *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *see also Howard v. Bouchard*, 405 F. 3d 459, 477 (6th Cir. 2005).

Application of a procedural bar would not affect the outcome of this case in any event.  The petitioner's conclusory allegations of ineffective assistance of trial counsel are inadequate to support habeas relief.  *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings); *see also Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief).  The petitioner alleges that his counsel did not adequately investigate his defense prior to trial, but he does not allege what

-19-

defense was lost by this failure.  He alleges that his trial counsel failed to adequately cross-examine the prosecution witnesses, but he does not indicate what line of questioning was omitted or how it would have aided his defense.   The only specific allegation of ineffective assistance is the petitioner's claim that his counsel should have presented an alibi defense.  Aside from failing to provide any offer of proof or affidavits from potential alibi witnesses, the allegation ignores the fact that the petitioner testified in his own defense that he was present at the scene and shot at the victim in self-defense.  Counsel was not ineffective for failing to present a factually unsupported defense that would have run contrary to his own client's version of events. *See e.g. Poindexter v. Mitchell*, 454 F. 3d 564, 573-75 (6th Cir. 2006) (counsel was not deficient in failing to pursue of "heat of passion" defense, in light of the fact that such a defense would have been inconsistent with petitioner's continued insistence that he had no involvement in the crime).

The Court finds that review of the petitioner's ineffective assistance of counsel claim is procedurally defaulted, and even of the petitioner demonstrated cause to excuse the default, the claim would fail on the merits.

## F.

Finally, the petitioner argues that prosecutorial misconduct rendered his trial fundamentally unfair.  He says that the prosecutor knowingly elicited Boles's perjured testimony and suggested that the petitioner was the man responsible for shooting the victim in the head on the street after the robbery.  The respondent again asserts that review of the claim is barred because the state court relied on a state procedural ground in denying relief during state post-conviction review proceedings.

As with the previous claim, the petitioner failed to raise the claim in his direct appeal; therefore, the state trial court found review of his claim barred under Michigan Court Rule 6.508(D)(3)(b)(i).  But as before, application of a procedural bar would not affect the outcome of this case.

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).  This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, and it does not matter whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected.  *Napue v. Illinois*, 360 U.S. 264, 270-72 (1959).  It is equally well established, however, that the petitioner bears the burden of proving that the testimony amounted to perjury.  Mere inconsistences in witness testimony do not establish the government's knowing use of false testimony.  *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987).  "[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation." *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990).  Therefore, to establish relief on his false testimony claim, the petitioner "must show (1) that the prosecution presented false testimony (2) that the prosecution knew was false, and (3) that was material." *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005).  "Moreover, the [petitioner] must show that the statement in question was 'indisputably false,' rather than merely misleading." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000) (quoting *United States v. Lochmondy*, 890 F.2d 817, 823 (6th Cir. 1989)).

The petitioner's argument that trial Boles's testimony amounted to perjury recalls the arguments proffered by his trial counsel during cross-examination of the witness and in closing argument. Although there were inconsistencies in the details of Boles's description of the robbery and aftermath, there has been no showing that Boles made false statements in her testimony or that the prosecutor knew of the alleged falsity. All the inconsistencies in Bole's testimony were highlighted by defense counsel during closing argument, and the trial court, sitting as trier of fact, was therefore fully apprised of the inconsistent evidence. It was in the best position to assess the credibility of the witnesses who testified before it.

The petitioner next asserts that the prosecutor wrongfully suggested during closing argument that the petitioner was the one who shot and killed the victim in the street. The petition does not identify the offending argument, but a review of the record suggests that the petitioner is referring to the following passage in the prosecutor's rebuttal: "And counsel for Stanley McCray says we don't know what really happened up there, Judge. But we know full well that Eien Johnson died of multiple gunshot wounds. And at the very least Stanley McCray admits that [']I shot him three or four times.[']" Trial Tr. June 22, 2000, at 28.

This passage must be read in context. The prosecutor was responding to defense counsel's argument that there was conflicting evidence about what occurred in the apartment. The petitioner had testified that the victim had drawn two guns before he shot at the victim, and Boles had testified that the victim was unarmed. In response to this argument, the prosecutor pointed out that the conflicting testimony should be considered together with the fact that the victim was shot multiple times and was killed, whereas none of the three defendants suffered any injuries at all, and the petitioner admitted to shooting his gun several times. Contrary to the petitioner's interpretation, the

passage quoted above does not suggest that the petitioner fired the shots outside the apartment that killed the victim. Nor did the trial court view the evidence in the light suggested by the petitioner. The trial court found one of the petitioner's co-defendants, Anthony Johnson, guilty of murder based on the evidence that the weapon he possessed was the one that inflicted the fatal shot. The court found the petitioner not guilty of murder. The prosecutor's comments during closing argument were not improper and did not result in any unfair prejudice.

Therefore, review of the petitioner's sixth amendment claim is procedurally defaulted, and even of the petitioner demonstrated cause to excuse the default, the claim would fail on the merits. The petitioner is not entitled to relief on this claim.

### IV.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner is not presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2011

s/Deborah R. Tofil
DEBORAH R. TOFIL

---